JOHN S. POPKIN & others *vs.* MARTHA W. SARGENT & others.

*A testator appointed J. P. his executor, and S. wife of J. P. executrix, jointly and severally. He then gave a legacy of $200, to be paid by his executor or executrix, to a certain charitable society, in one year after his decease, and he said, "to enable my executor or executrix to pay this legacy, I give unto them, or either of them, forever, a lot of land," described; "this lot of land being devoted for the payment of this legacy, is to be delivered to said society, unless payment is made by my executor or executrix" as aforesaid. The will was proved in 1801, and J. P. alone accepted the trust as executor, and paid the legacy according to the will, his wife S. never having qualified or acted as executrix, and J. P. and S. his wife, jointly occupied the premises until 1827, when J. P. died intestate, leaving several heirs. His widow S. never having had her dower set out to her, continued to occupy the whole premises until 1847, when she died, leaving heirs by a former husband. Held, that by the devise, the fee of the estate vested in J. P. in severalty, upon the payment of the legacy.*

PETITION for partition brought originally in this court, wherein the petitioners claimed partition of two separate tracts of land described in the petition. The respondents admitted the right to partition in the first tract, and the only controversy was about the second. The question was submitted on an agreed statement of facts, of which the following are the most material:

Eliakim Willis, of Malden, formerly owned the tract in dispute, and by his last will devised it in the manner therein set forth. The nature of the opinion requires that the will be fully stated, as in the margin.* The most material clauses of the will are in italics.

---

* "In the name of God, Amen. I, Eliakim Willis, of the town of Malden, in the county of Middlesex and Commonwealth of Massachusetts, clerk, being at present in the exercise of my reason, and of a disposing mind, do make this last will and testament, apprehensive of my mortality. My soul I commit into the hand of God who gave it, humbly and entirely relying on the merits and mediation of Jesus Christ, for pardon and acceptance with him; my body I resign to the dust, to be buried at the direction of my executor and executrix, whom I shall hereafter appoint, in hope of a joyful resurrection to immortal life. As to the interest I have in worldly things, which a kind Providence hath given me, I dispose of it upon mature deliberation in the following manner and form:

"Imprimis. I will that all my just debts be paid by my executor and executrix.

"Item. I give unto the church of Christ, in Malden, a quarto bible, English print, to be read in public on every Lord's day.

Said will was dated December 20, 1800, and was duly proved and allowed April 17, 1801. Sarah Popkin, named in the will as executrix, jointly with her husband, John Popkin, never qualified or acted as executrix, but John Popkin alone accepted the trust, and duly administered the estate. On the 17th of February, 1802, he paid the legacy of $200 mentioned in the will, to the Massachusetts Society for the propagation of the Gospel among the Indians, and no question arises about the due administration of said estate.

"*Item. I give towards the propagation of the gospel among the savages and other inhabitants of America,* $200, *to be paid by my executor or executrix, to the Massachusetts Society for that purpose, their committee or their treasurer, in one year after my decease, and to enable my executor or executrix to pay this legacy, I give unto them, or either of them forever, a lot of land lying on the east side of the road leading to Malden Bridge, &c., [the second tract described in the petition.] This lot of land, being devoted for the payment of this legacy, is to be delivered to the society, &c., unless payment is made by my executor or executrix of the sum, and at the time above mentioned.*

"Item. I give unto my niece Elizabeth Kempton, ten dollars, also an English print bible to each of the daughters of my late brothers, Benjamin and Samuel, and to each of the children of my late niece Mercy Dexter.

" Item. I give unto my sister, Mercy Marchant, a comfortable support in life, and a decent interment at death.

" Item. I give unto Colonel John Popkin, fifty dollars.

"Item. I give unto my brothers Ebenezer and Jireh Willis, my wearing apparel, to be equally divided between them.

" I give unto the Church of Christ, in New Bedford, the annual profits of my pew in the north meeting-house in said town, forever, after the decease of my brother Ebenezer Willis and his wife.

" Item. All the rest and residue of my estate, both real and personal, I give as follows :

" Unto my niece Sarah Popkin and her daughters, Patty Willis and Betsy Howes Sargent, one half of my real and all my internal personal estate, and to Ebenezer Willis Popkin, I give one half of my real and all my external personal estate, to be theirs forever.

"Item. Be it known, however, that my will and pleasure is that my niece Sarah Popkin shall have the improvement of my whole estate during her natural life, if it is not contrary to the laws of this commonwealth, (the preceding article notwithstanding,) if it is contrary, this item I hereby make null and void, so as no way to affect the other items of this my last will.

"Item. I give unto my executor and executrix, jointly and severally, full power and authority to sell and dispose of so much of my real and personal estate, or lots of land, as may be necessary for the payment of my debts and legacies.

" *Lastly. I do by these presents, constitute, appoint, and empower Colonel John Popkin my executor, and my niece Sarah, his wife, before mentioned, my executrix, jointly and severally, of this my last will and testament.*

" In testimony whereof, &c."

John Popkin and his wife Sarah, continued in possession and occupation of said tract of land now in dispute, as a part of the homestead, until the decease of said John, in May, 1827. He died intestate, leaving several heirs, under whom the petitioners claim, and his wife Sarah, continued in actual occupation of the whole estate until her death in October, 1847, her dower therein never having been legally assigned to her.

The respondents claim under said Sarah Popkin, formerly Sarah Sargent, as heirs by her former marriage ; not by title acquired by adverse possession, but by her alleged title under said will.

It was agreed that if the court should be of opinion that John Popkin was entitled to said tract of land in fee-simple, partition was to be granted according to the prayer of the petition ; but if the devise of said tract was a devise to said John Popkin, and his wife Sarah jointly, or as tenants in common, or if she, by surviving her husband, or otherwise, became the sole owner thereof, or of any part thereof, then partition is to be decreed accordingly, and if necessary, the petition should be amended accordingly.

*E. Buttrick*, for the petitioners.

*S. Bartlett*, for the respondents.

Cushing, J. The whole question here is of the legal effect of one of the devises in the testament of Mr. Willis.

It is common to say that, in the construction of a devise, the intention of the devisor is to prevail, as distinguished from the case of deeds, in which the legal intendment of the language employed is conclusive as to the effect of the grant. That proposition, however, in each of its parts, needs qualification. A deed, not less than a testament, is the expression in words of an intention ; but a deed, even if in the form of a deed poll, is usually a contract between two parties, and, of course, when a question arises as to the meaning of the words employed in it, we must determine this by rules of construction of common force with both parties ; or, as the phrase is, by understanding the words in a technical, that is, a legally established sense. It is otherwise in the case of a testament, where the inquiry is of the intention of one party, the testator

28*

Besides which, a will is an instrument' subject to be made
under circumstances in which the party cannot have the as-
sistance of persons skilled in the law, and is, therefore, *inops
consilii.* Hence the intention of the testament is to be carried
into effect, although it be not expressed in the most formal
and apt language. Hence, also, if there be any doubt as to
the import of the particular clause, the intention of the testator
in that passage may be ascertained by consideration of all the
other parts of the will, and of its general scope and intention

In order, therefore, to determine the legal effect of the
present devise, we have to identify ourselves, so far as we
may, with the testator; to put ourselves in his place and his
mind; to take into view his character, his time of life, his per-
sonal and social relations, the character and condition of his
connections; nay, the state of society in which he lived, its
knowledge, its convictions, and even its prejudices and its
passions. All these considerations are essential to the perfect
understanding of his intention.

Meanwhile, we may have occasion to recur to the legal in-
tendment of words, in order to provide for contingencies not
contemplated or expected by the testator, and even thus to
correct erroneous notions of his, touching the effect of partic-
ular words employed, in order to accomplish that, which, by
other parts of the will, and by its general tenor, shall have
been ascertained to be the clear intention of the testator.

And it may happen that the legal effect of given words of
devise, otherwise uncertain, shall have been determined by
statute. Thus the law of this commonwealth enacts as fol-
lows: Rev. Sts. *c.* 59, §§ 10 & 11 : " All conveyances and
devises of land made to two or more persons, except as pro-
vided in the following section, shall be construed to create
estates in common, and not in joint-tenancy; unless it shall
be expressed therein that the grantees or devisees shall take
the lands jointly, or as joint tenants, or in joint tenancy, or to
them and the survivor of them.

" The preceding section shall not apply to mortgages, nor
to devises or conveyances made in trust, or made to husband
and wife, nor to any devise or conveyance, in which it shall

manifestly appear, from the tenor of the instrument, that it was intended to create an estate in joint-tenancy."

Bearing in mind these prefatory considerations, let us now proceed to see what the precise question is.

The particular clause upon which the question arises, is the following:

" Item.   I give towards the propagation of the gospel among the savages and other inhabitants of America, two hundred dollars, to be paid by my executor or executrix, to the Massachusetts society for that purpose, their committee or their treasurer, in one year after my decease; and to enable my executor or executrix to pay this legacy, I give unto them or either of them forever, a lot of land," (describing it.)   " This lot of land being devoted for the payment of this legacy, is to be delivered to the society, &c., unless payment is made by my executor or executrix, of the sum and at the time above mentioned."

Mr. Willis appoints executors of his will in the following words:

" I do by these presents constitute, appoint, and empower Col. John Popkin, my executor, and my niece Sarah, his wife, before mentioned, my executrix, jointly and severally, of this my last will and testament."

It appears by the facts agreed, that, on the death of Mr. Willis, Col. Popkin proved the will alone, and himself paid the legacy to the Society de Propaganda; that he and his wife occupied the Willis homestead until his death; that Mrs. Popkin survived, and continued in occupation until the year 1847; and now, upon process of partition between the two sets of heirs, the question is presented, whether the four acres of land, charged with the legacy of two hundred dollars, became the property of Col. Popkin, or of Col. Popkin and Mrs. Popkin as tenants in common, or as joint tenants, with survivorship to Mrs. Popkin.

Or, to commence the inquiry further back; Are the four acres of land in the clause quoted, devised to the Massachusetts Society for the Propagation of the Gospel among the savages and other inhabitants of America ?   Or is it a devise to John

Popkin, who alone qualified as executor, in fee? Or to John Popkin in fee, defeasible? Or to John Popkin and Sarah Popkin as tenants in common under the general rule of the statute? Or to John Popkin and Sarah Popkin as joint tenants, under the statute exception to the general rule of the statute?

All these intricate questions of law are to be determined with so much of precision as the case admits, by looking into the contents of the will, and deducing therefrom the probable intention of the testator. It involves, not only examination of his own thoughts, as he lay, in the infirmity of age, and in the near approach of death, meditating how best to dispose of his worldly goods, but investigation also of the history and condition of his family, of which a first and second generation are both gone, and a third is now maturing into old age. In fact, we have them all here before us in this will, every word of which is pregnant with meaning in respect of their relation to his estate, and his intentions.

Eliakim Willis was pastor of the parish of Malden; a bachelor or a widower without children; a devout old man of the state of theological opinion prevailing at the close of the last century, when Puritanism, though ceasing to be exclusive, was not the less earnest and sincere. He was from New Bedford, where he had a brother Ebenezer Willis, still living; and he retained there, as a reminiscence of his youth, the old family pew in the North Meeting-House. By prudence and care, he had economized, out of his modest salary as a country clergyman, a decent estate, consisting chiefly of land. His brothers, Ebenezer and Jireh, were, it may be presumed, reasonably well off; for he bequeathed to them by his will some personal objects only, as tokens of remembrance and affection. He had a widowed sister, Mercy Marchant, for whose comfortable support through life he provided. He remembered the church in which he had so long ministered, and gave to it his favorite copy of the Bible, to be read in public on every Lord's day.

He then looked around for some object of general philanthropy worthy of his regard. He doubted, but, on the whole,

came to a wise conclusion, and resolved to make a donation to the Society for the Propagation of the Gospel among the Indians, who, he might have reflected, had not been over-well treated either by England or by her colonies in New England. As to family connections, he had a favorite niece, who had passed through her romance of youth, had married and been left by her deceased husband a widow, with two children, but without property, and had been invited by her good uncle to look to him for support, and probably been taken into his family. Among the parishioners of Mr. Willis was a substantial and worthy gentleman, himself a widower, apparently with a child or children. A very natural event followed. Colonel Popkin married the still comely widow, and a third family grew up under the eyes, and enjoying the affection of Mr. Willis. Such was the condition of the family when the will was made.

Mr. Willis looked considerately after his own affairs; but consulted Colonel Popkin, and was tenderly cared for by his niece Mrs. Popkin. They were his children in affection. Accordingly, in making general disposition of his property, he divided the bulk of it equally between the fruits, respectively, of the first and second marriages of his niece, providing however, that she should have the improvement of the whole estate during her natural life. But here, doubts as to the law came into his mind. The spectre of the celebrated rule in Shelley's case rose before him. Perhaps—for it happened during his life—he had read or heard of the tribulation and the perplexities of the Earl of Mansfield in the case of *Perrin* v. *Blake*. And accordingly, after making the devise to the two sets of his niece's children, with reservation of a life-estate in his niece, he added the following words: " If it is not contrary to the laws of this commonwealth—the preceding article notwithstanding—if it is contrary, this item I hereby make null and void, so as in no way to affect the other items of this my last will." In this way, his niece and her children were amply considered, and the whole office of gratitude and love to them, and each of them respectively, was faithfully performed, so far as the law would allow it to be done.

In regard to the executorship of his will, he mentioned both his niece and her husband, either out of delicacy to them, or to make sure, at least, that one or the other of them should be charged with the execution of all his testamentary purposes, and have the settlement of his estate. But he did not suppose that both would or could act, nor intend a necessary joint-executorship. The proof of this is, that, in referring to them he uses either the copulative or the alternative conjunction indifferently, sometimes speaking of his " executor and executrix," and sometimes of his " executor or executrix." He the rather supposed, we think, that Colonel Popkin would administer alone, if they were both alive at his decease ; for that is the only plausible explanation of the fact that he bequeathed the sum of fifty dollars to Colonel Popkin.

Meanwhile, he resolved there should be no mistake or slip with regard to his bequest of two hundred dollars to the Society de Propaganda. His property, after the payment of debts and legacies, was land. He knew that land, as such, would do the society no good. But he " devoted " four acres of land to make sure of the payment of the legacy; and the land was to be "delivered" to the society in case of non-payment of the legacy. Of course, neither " devoted " nor " delivered " is technical ; but it was a sufficiently intelligible definition of his intention, which was, to bind this land to the discharge of the legacy, and to make sure that the society should have either the money or the land. The plan he adopted to secure his object was, to devise the land to his executor or executrix, or either of them, as the case might be, to enable him or her to pay the legacy with which it was especially charged. And the natural inference is, that, whichever of the two,—if only one of them—assumed the charge, and paid the legacy, he or she was entitled, in virtue of the devise, to take and hold the land " forever," that is, to him or her, and his or her heirs in fee.

Nothing appears as to the value of this land. But the presumption is that it was of the precise value of the legacy with which it was charged. Mr. Willis destined his whole estate, after the payment of specific legacies, to his niece for life, and

then to her children. It would have been a departure from that purpose to contemplate any additional benefit for his niece and her children out of these four acres of land. If that had been his intention, he would have made the bequest to the society a general charge on the estate, as he did the provision for the support of his sister, Mercy Marchant. Instead of this, he " devoted" these four acres to the special purpose, leaving his executor or executrix to choose whether to pay the legacy and keep the land, or to turn over the land to the society. In effect, the devise operated as a gift to Col. Popkin, defeasible on condition, it is true, but, the condition having been performed, the fee vesting absolutely in Col. Popkin. We consider the devise a specific one to the executor or executors as such, with condition only to hold and perform, and on failure thereof, with a limitation over to the society.

Such is the conclusion, which a deliberate survey of the whole testament, and a careful scrutiny of all its parts and provisions, has impressed upon our minds.

It being thus concluded that the testator, in the devise to his " executor or executrix," intended to speak of them officially, or as a class, in that point of view it is not necessary to have it appear that Mrs. Popkin renounced; it suffices that she did not qualify or act; that Col. Popkin assumed the charge alone, and executed the will according to its tenor, more especially in so far as concerns the Society for the Propagation of the Gospel. The alternative supposition is that the reference to the executors was a mere *designatio personarum.* We cannot think such the true construction. That view of the subject has been very learnedly argued by counsel; but we do not find any thing in the suggestions they urge, or the authorities they adduce, to shake our conviction of the actual intention of the testator as deduced from the language of the will, nor any thing to impeach the legality of that intention. On the other hand, the great current of legal authority seems to us to flow in the direction of the conclusion here presented.

As to the *nature* of the estate created by the devise; in

this case, the devise contains words to constitute an estate in fee. If it did not, the devisee would nevertheless take a fee by implication, provided he performed the condition and paid the legacy. In that event, the only question would be, whether, as the devisee was executor also, he should take for the benefit of the estate or for his own benefit; a question much discussed in several reported cases. Here, there is no room for controversy on that point, because the words of the devise manifestly confer a beneficial interest on the executor, provided he performs the condition. Which consideration renders it of less consequence, indeed, whether the terms " executor or executrix," in the devise, are to be construed as intending persons by virtue of their office, or as *personæ designatæ;* for the estate being conditional, must enure, in either case, to the party who performs the condition.

To argue a joint tenancy, and so to infer survivorship in Mrs. Popkin, is to go counter, not only to the enactment of the statute, but also to the common law ; for in this part of the will the words are " executor *or* executrix," not " executor and executrix." And if it were otherwise, there would need to be joint performance to produce the result of joint-tenancy; as indeed there would have to be, in order to make a tenancy in common. It is no answer to this to say that the executrix named, being wife of the executor, could not assume the charge without her husband's consent. That is equivalent to saying that the wife could not execute the condition and put herself in a predicament to take the estate during the lifetime of her husband. Be it so ; such, we think, must have been the view of the testator, if he reflected on the point. The death of one or the other of the parties might intervene ; in which case the other of course would administer ; Mrs. Popkin, if she survived, would be *sui juris*, and might execute the condition; and whether she continued in life or not, the condition could be performed by Col. Popkin.

On the whole, therefore, we think partition must be made according to the prayer of the petition.

*Decree accordingly.*